IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOSEPH H. WALRATH                                                              PLAINTIFF

vs.                                          CIVIL NO. 04-3077

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                   DEFENDANT

## MEMORANDUM OPINION

Joseph Walrath (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application disabled adult children's benefits ("DAC"), under Sections 216(i) and 223 of the Act, 42 U.S.C. § 1382c(a)(3).

**Background:**

The applications for DAC and supplemental security income ("SSI") now before this court were filed on April 25, 2000, alleging an onset date of October 1, 1971, due to a variety of mental impairments associated with a brain injury sustained in an automobile accident, pancreatitis, and deficits in hand grip strength. (Tr. 72, 1063). An administrative hearing was held on June 23, 2003. (Tr. 1061). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on June 23, 2003, plaintiff was thirty-seven years old and possessed a high school education with a general educational development degree. (Tr. 43, 78). The record reveals that he had past relevant work experience ("PRW"), painting airplane parts, working as a short order cook, and working as a water driller. (Tr. 14, 31, 55).

On January 30, 2004, the Administrative Law Judge ("ALJ"), issued a partially favorable

decision awarding plaintiff SSI benefits to begin on April 25, 2000, the date of plaintiff's SSI application. (Tr. 20). However, he concluded that plaintiff was not entitled to DAC. (Tr. 20). The ALJ determined that from June 14, 1986, until June 14, 1990, plaintiff had medically determinable impairments to include a remote history of skull fracture and recent left orbital fracture without any evidence of visual acuity deterioration. (Tr. 19). However, during the relevant time period, the ALJ found that none of these impairments were "severe," in that they were not expected to significantly limit his physical or mental ability to do basic work activities. (Tr. 19). Therefore, he determined that plaintiff was not under a disability before age twenty-two, and not entitled to DAC. (Tr. 19).

On September 28, 2004, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded the opportunity to file timely appeal briefs, however, plaintiff failed to do so. (Doc. # 9, 10, 11).[1]

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

---

[1]The undersigned is cognizant of the fact that the ALJ also includes, in his opinion, a discussion of the impairments plaintiff exhibited on and after April 25, 2000. (Tr. 19). However, because these impairments are not relevant to the issue presently before the Court, we need not recite those findings.

2

964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Evidence Presented:**

The relevant medical evidence reveals the following. On June 21, 1974, plaintiff underwent an audiogram with Dr. Paul Teague. (Tr. 873). In a report dated August 22, 1974, Dr. Teague indicated that the audiogram had revealed some hearing loss, but determined that ear tubes were not an option at that time. (Tr. 873).

On March 20, 1990, plaintiff was injured in an altercation resulting in a blow to his left eye. (Tr. 106). As a result, he developed pain and swelling, as well as double vision. While plaintiff did not seek immediate medical attention, when he did go to the emergency room, imaging scans revealed a left orbital blowout fracture. (Tr. 106, 109, 114). However, a CT scan of his brain was normal. (Tr. 115). Six days later, plaintiff was evaluated by Dr. D. Taylor, who confirmed the presence of a left orbital blowout fracture. (Tr. 106). He also noted diplopia in primary gaze and limited excursion of the globe in both a superior and inferior direction. (Tr. 106-108). As such, on April 3, 1990, plaintiff successfully underwent exploration and repair of the left orbital fracture with insertion of alloplast[2] to help in the reconstruction. (Tr. 106). Testing revealed that plaintiff's visual

---

[2]The term alloplast refers to the insertion of a foreign body used for implantation into the tissue. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1903 (29th ed. 2000).

4

acuity was grossly intact, no evidence of scleral hemorrhage or any other evidence of orbital trauma, and much improved globe movement. (Tr. 105).

**Discussion:**

In order to qualify for DAC benefits, plaintiff must,

1. Be the child of a worker entitled to a retirement or disability insurance benefit, or who died fully or currently insured, and
2. Be a dependent of the insured, and
3. Have filed an application for child's benefits, and
4. Be unmarried, and
5. Be under the age of eighteen, or
6. If age eighteen or over, be under a disability which began before the child reached age twenty-two.

*See* 42 U.S.C.A. § 402(d)(1)(b); 20 C.F.R. § 404.350(a). Because the only substantive issue in this matter is whether the Commissioner's denial of plaintiff's application for DAC is supported by substantial evidence, the only evidence relevant to our decision is the medical evidence dated between October 1, 1971, his alleged onset date, and June 15, 1990, the date he turned age twenty-two. Further, the sole question before this court is whether plaintiff was disabled prior to his twenty second birthday.

An ALJ may consider an impairment to be non-severe only if a claimant's medical impairments are so slight that it is unlikely he or she would be found to be disabled even if their age, education, and work experience were taken into account. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the vocational analysis." *Bowen*, 482 U.S. at 158.

AO72A
(Rev. 8/82)

In the present case, the ALJ concluded that the impairments plaintiff had during the relevant time period were non-severe. (Tr. 19-20). We note that the evidence reveals that plaintiff was treated for a hearing impairment in 1974, but did not seek any further treatment for that condition. In fact, at the time of his audiogram, Dr. Teague indicated that it was not necessary for him to undergo surgery to place tubes in his ears. (Tr. 873). He did not again seek medical treatment until 1990, at which time he was treated for a left orbital blowout fracture. (Tr. 106). *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Following this injury, the evidence reveals that a CT scan of his brain was normal, his visual acuity remained intact, and there was no evidence of hemorrhage or orbital trauma. (Tr. 106). In fact, following a successful exploration and repair of the left orbital fracture, there is no evidence to suggest that this injury resulted in a lasting impairment. (Tr. 106). *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). We also note that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898F.2d 1361, 1364 (8th Cir. 1990). Further, there is no evidence of physician ordered limitations concerning plaintiff's activities. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (holding that absence of limitations placed on plaintiff's activities by doctors is inconsistent with claims of disability). Accordingly, we agree that the medical evidence reveals impairments that were mere slight abnormalities that did not significantly limit plaintiff's ability to perform any basic

6

work activity.

Also of significance is the fact that plaintiff's work records and work history report indicate that he engaged in work activity during the relevant time period. (Tr. 42, 86, 1065, 1068, 1074). Although the ALJ determined this did not rise to the level of substantial gainful activity, it is activity that indicates plaintiff's capacity for work. *See Starr v. Sullivan*, 981 F.2d 1006, 1009 n.3 (8th Cir. 1992).

In addition to the medical evidence, plaintiff presented testimonial evidence that he was hit by an automobile in 1971, at the age of three. (Tr. 1063, 1070-1071, 1080). Plaintiff testified that he was hit in the head by the bumper of a car, and underwent surgery to remove four bone fragments from his brain. (Tr. 1070-1071). His mother indicated that plaintiff was then in a coma for thirteen or fourteen days, after which he lost the ability to perform various tasks for which he had to be retrained. (Tr. 1080). In addition, she stated that he was paralyzed on his left side for six months. (Tr. 1081). The testimony revealed that plaintiff now experiences "black out" headaches and has a soft spot on his head. (Tr. 1071, 1081). While this evidence does suggest that plaintiff was incapacitated for a six month period, there was no medical evidence to show that this incident caused permanent functional limitations. *See Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). There is no medical evidence to suggest that plaintiff ever sought treatment for the residuals of this accident during the relevant time period. In fact, in October 2000, plaintiff was noted to be alert and oriented to his surroundings, with intact recent and remote memory functioning. (Tr. 14, 371). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a

AO72A
(Rev. 8/82)

factor an ALJ may consider). Therefore, since the residuals of the accident appear to have lasted only six months with no evidence of long-term effects, we cannot say that this impairment was severe.

The ALJ also properly considered all of the evidence relating to plaintiff's subjective complaints, including evidence presented by third parties that related to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, he noted that plaintiff was able to earn his general equivalency degree, in spite of his alleged limitations regarding remote and recent memory functioning.[3] (Tr. 16, 69, 78). *Cf. Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (holding that ability to attend college was inconsistent with subjective allegations of pain and limitation). In 2000, plaintiff also reported an ability to perform a wide range of daily activities to include caring for his personal hygiene, performing household chores, shopping for groceries and clothing, performing banking and post office functions, paying bills, using a checkbook, driving, reading, and visiting friends. (Tr. 49-50, 66-67). Clearly, these are activities that are inconsistent with plaintiff's alleged level of functioning. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*,

---

[3]There are, however, inconsistencies in the record concerning plaintiff's education. In other documentation, he reported earning a high school diploma, but being in special education classes for reading. (Tr. 16, 52). The ALJ properly concluded that this inconsistency undermined his credibility. *See Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001) (holding that claimant's past inconsistent statements undermined his credibility).

8

75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Therefore, we find substantial evidence to support the ALJ's determination that plaintiff's impairments were non-severe, and that plaintiff did not meet his burden of proving that he suffered from a disability prior to attaining age twenty-two.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 1st day of February 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)